UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 04 C 1791 |
| | ) | |
| ROY YOUNG | ) | Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

On April 19, 2001, a federal grand jury indicted Petitioner Roy Young for kidnaping Beatrice Patrick, committing interstate domestic violence against her, and carrying a firearm during and in relation to the commission of a crime of violence. On August 28, 2001, the jury acquitted Young on the kidnaping charge, but found him guilty of the remaining counts. This court sentenced Young to five years for each count to run consecutively, for a total term of 120 months, and the Seventh Circuit affirmed his conviction and sentence.

Petitioner now collaterally attacks his conviction and sentence pursuant to 28 U.S.C. § 2255. Petitioner argues that his sentence violates the prohibition on *ex post facto* laws and transgresses the Federal Sentencing Guidelines. Petitioner also asserts that the jury had insufficient evidence upon which to convict him of interstate domestic violence or using a firearm to commit a crime of violence; the U.S. District Court for the Northern District of Illinois was an improper venue to try him under 18 U.S.C. § 924(c)(1)(A); and his trial and appellate counsel were unconstitutionally ineffective. For the reasons stated here, the court denies Young's petition.

## BACKGROUND

The Seventh Circuit's decision affirming Petitioner's conviction provides an extensive overview of the facts giving rise to Petitioner's indictment and the trial proceedings. *See United States v. Young*, 316 F.3d 649, 652-56 (7th Cir. 2002). Patrick and Petitioner began dating as teenagers in the late 1980s. *Id.* at 652. The couple's stormy relationship produced three children, but was marred by physical violence from its inception, (Tr. at 373); in April 2000, Patrick obtained an order of protection. *Young*, 316 F.3d at 652. By January 2001, Patrick and Petitioner were

living apart, she in Chicago, Illinois, and he in Michigan City, Indiana. *Id.*

On January 14, 2001, Petitioner drove from Michigan City to Chicago where he found Patrick in the company of another man. *Id.* at 653. After a struggle in which Petitioner punched Patrick, smashed a car window with a jack, and threatened to kill her, Patrick returned to Indiana with Petitioner.[1] *Id.* Once in Petitioner's apartment, Petitioner punched, kicked, and choked Patrick repeatedly over the course of four days. *Id.* Patrick testified to the grand jury that Petitioner loaded a gun and struck her in the face with it. *Id.* One of Petitioner's friends observed a gun in Petitioner's waistband (which Petitioner later asked the witness to hide) following a round of beatings during Patrick's confinement. *Id.* On January 19, 2001, Patrick persuaded Petitioner to drive her back to Chicago where she escaped into her grandmother's home and contacted the police. *Id.* at 654. Patrick told the 911 dispatcher that she was being held against her will by Petitioner and that he had a gun. *Id.*

Shortly thereafter, Patrick told attending medical personnel that Petitioner had kidnaped, beaten, and sexually assaulted her. *Id.* She told medical personnel as well as investigating law enforcement authorities that same evening that Petitioner had a gun with which he threatened her into going to Indiana. *Id.* The FBI arrested Petitioner on January 22, 2001. *Id.*

On April 19, 2001, a grand jury returned a three-count indictment. (Dkt. No. 26.) Count One charged Petitioner with kidnaping Patrick in violation of 18 U.S.C. § 1201(a)(1). (*Id.*) Count Two alleged that Petitioner "traveled across a State line, namely, from Illinois to Indiana, with the intent to injure, harass, and intimidate [Patrick] . . . and in the course of and as a result of such travel

---

[1] While in Illinois, Petitioner often "kept one hand in his pocket, which apparently contained a heavier object." *United States v. Young*, 316 F.3d 649, 653 (7th Cir. 2002). While witnesses at trial seemed to believe that this object might be a gun, no witness actually saw Petitioner with a gun in Illinois. (Tr. at 312.)

intentionally committed a crime of violence" in violation of 18 U.S.C. § 2261(a)(1), (b)(3).² (*Id.*)

Count Three states Petitioner

> used and carried and brandished a firearm as defined in Title 18, United States Code, Section 924(c)(1)(A), during and in relation to the commission of a crime of violence, namely kidnapping [sic], in violation of Title 18, United States Code, Section 1201(a)(1), as more fully described in Count One of this indictment, and interstate domestic violence, in violation of Title 18, United States Code, Section 2261(a)(1), as more fully described in Count Two of this indictment, which crimes may be prosecuted in a court of the United States; In violation of Title 18, United States Code, Section 924(c)(1)(A)(ii).

(*Id.*) At trial, Patrick recanted much of her story, including her statements that Petitioner had a gun and that he forced her to go to Indiana. *Young*, 316 F.3d at 654-55. The government, however, introduced Patrick's grand jury testimony to the contrary and offered an expert witness who testified to the self-defeating patterns of behavior exhibited by victims of domestic abuse, including a tendency to deny earlier accusations. *Id.* at 655.

The jury acquitted Petitioner on Count One but found him guilty on Counts Two and Three. *Id.* at 656. The government sought a sentence of 144 months, five years for the interstate domestic violence violation and seven years for carrying a firearm. (1/29/02 Tr. at 3.) The defense argued for ninety-three months, with thirty-three months for Count Two and five years for Count Three.³ (*Id.*) With respect to Count Two, the parties differed on the question of whether the evidence in support of the interstate domestic violence charge established by a preponderance that use of the kidnaping Guideline was appropriate. (*Id.* at 17.) The disagreement with respect to Count Three turned on whether Petitioner had "brandished" his firearm in the course of committing interstate

---

² In the original April 19, 2001 indictment, the crime of violence is specified as "Sexual Battery in violation of Indiana Code Section 35-42-4-8(a)(1)." (Dkt No. 26.) A second grand jury issued a superseding indictment in this case on August 16, 2001, which removes the reference to any provision of state law in Count Two. (Dkt. No. 69.)

³ It appears from the sentencing transcript that defense counsel might have actually proposed a total sentence of ninety-nine months, (1/29/02 Tr. at 3); however, the sum of thirty-three months on Count Two and sixty months on Count Three is only ninety-three. The record offers no explanation for this discrepancy.

domestic violence.  (*Id.*)  The court made findings in favor of the government with respect to Count Two and in favor of the Petitioner with respect to Count Three, sentencing Petitioner to five years (the statutory maximum) for Count Two and five years (the statutory minimum) for Count Three, to run consecutively, for a total term of 120 months.  (*Id.* at 22-23.)

On appeal from his conviction and sentence, Petitioner argued that this court's decision to admit the testimony of the government's expert witness and Patrick's grand jury testimony were in error.  *Young*, 316 F.3d at 656.  Petitioner also appealed the sufficiency of the evidence with respect to his conviction under 18 U.S.C. § 924(c)(1)(A) and challenged a supplemental instruction given by this court in response to a question from the jury during deliberation.  *Id.*  The *Young* court found against Petitioner on each ground and affirmed this court's decision.  *Id.* at 662.

## **DISCUSSION**

Petitioner now raises six issues in his collateral attack on his conviction and sentence.  Specifically, Petitioner argues that his sentence with respect to Count Two violates the constitutional prohibition on *ex post facto* laws and the Federal Sentencing Guidelines.  (Memorandum of Law in Support of 28 U.S.C. § 2255 Motion (hereinafter, "Pet. Mem.,) at 1-8.)  Petitioner also challenges the sufficiency of the evidence with respect to Counts Two and Three.  (*Id.* at 9-19.)  Moreover, Petitioner asserts that the Northern District of Illinois was an improper venue, (*id.* at 20-22), and, finally, that defense counsel was ineffective.  (*Id.* at 23-29.)

A § 2255 petition, however, "is not a to be used as a substitute for a direct appeal."  *United States v. Barger*, 178 F.3d 944, 848 (7th Cir. 1999).  For any issue raised collaterally, Petitioner must either show "good cause for, and prejudice from, the failure to raise the issue on direct appeal," *id.*, or "that a refusal to consider the issue would be a fundamental miscarriage of justice."  *Galbraith v. United States*, 313 F.3d 1001, 1006 (7th Cir. 2002) (internal quotation marks omitted).  With the exception of the challenge to his conviction under 18 U.S.C. § 924(c)(1)(A), Petitioner did not raise any of his objections on direct appeal.  *Young*, 316 F.3d at 656.  The Supreme Court's

4

decision in *Massaro v. United States*, 538 U.S. 500, 504 (2003), forgives Petitioner's failure to raise his ineffective of counsel claims in an earlier proceeding; however, Petitioner has failed to show cause for the failure to raise his remaining issues. Moreover, the Seventh Circuit equates the "fundamental miscarriage of justice" with "the conviction of an innocent person," *Hayes v. Battaglia*, 403 F.3d 935, 938 (2005), a state of affairs Petitioner does not allege. The court concludes that Petitioner has defaulted his sentencing challenge,[4] his challenge to the sufficiency of the evidence on Count Two, and his venue objections.

In any event, the arguments on Count Two and venue would fail on their merits. Petitioner contends that a federal interstate domestic violence violation may only lie under 18 U.S.C. § 2261 when the assault takes place while actually driving on an interstate highway (possibly in a commercial vehicle). (Pet. Mem. at 15-16.) The testimony at trial shows that any physical injuries Patrick sustained at the hands of Petitioner occurred in stationary residences in Illinois and/or Indiana. But the plain language of the statute proscribes both crimes of violence committed against an intimate partner "in the course of" interstate travel and crimes of violence that occur "*as a result of*" such travel. 18 U.S.C. § 2261(a)(1) (emphasis added). Petitioner's fist would have had considerable difficulty connecting with Patrick's person had he remained in Indiana or she in Illinois.

As an alternative to the sufficiency challenge, Petitioner seems to contend that the Supreme Court's decisions in *United States v. Morrison*, 529 U.S. 598 (2000), and *United States v. Lopez*, 514 U.S. 549 (2000), render 18 U.S.C. § 2261 unconstitutional. (Pet. Mem. at 17-19.) In finding 42 U.S.C. § 13981 of the Violence Against Women Act unconstitutional, *Morrison*, however, specifically compares that provision with 18 U.S.C. § 2261, and notes the uniformity with which Courts of Appeals have held that § 2261 comports with Congress's authority under the Commerce

---

[4] To the extent that Petitioner argues that his defense counsel was ineffective for the manner in which he conducted himself at sentencing, (Pet. Mem. at 26-27), the court addresses Petitioner's *ex post facto* argument below.

Clause and *Lopez*. *Morrison*, 529 U.S. at 613 n.5.

Petitioner's contention that the Northern District of Illinois was an improper venue for trying Petitioner for the violation of 18 U.S.C. § 924(c)(1), (Pet. Mem. at 20-22), is also without merit. In *United States v. Rodriguez-Moreno*, the Supreme Court held, "[w]here venue is appropriate for the underlying crime of violence, so too it is for the § 924(c)(1) offense." 526 U.S. 275, 282 (1999). In this case, the underlying crime of violence is interstate domestic violence for which Petitioner does not contend that the Northern District of Illinois is an improper venue. Were the court to reach the issue, it would conclude that venue was proper for the interstate domestic violence count. *See* 18 U.S.C. § 3237(a) ("Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."). By extension, venue was proper for the § 924(c)(1) violation.

The remaining issues pertaining to his conviction under Count Three and the effectiveness of his defense counsel are addressed on their merits below.

**1.      Sufficiency of the Evidence with Respect to Count Three**

Petitioner asserts "that it was not proven beyond a reasonable doubt that he 'used' a firearm or 'carried' a firearm in relation to Counts 1 or 2 of the indictment." (Pet. Mem. at 9.) He made the same argument on direct appeal, however, and the Seventh Circuit rejected it as an overbroad reading of *Bailey v. United States*, 516 U.S. 137 (1995) (holding that the term "use" in 18 U.S.C. § 924(c)(1) denotes active employment). *Young*, 316 F.3d at 660-61. An initial federal determination of an issue raised on direct appeal controls when the issue is subsequently raised on collateral review if (1) the same ground presented in the § 2255 petition was determined adversely to the petitioner on direct appeal, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits on collateral review. *Peoples v. United States*, 403 F.3d 844, 847 (2005) (noting that the approach set out for dealing with issues

6

re-raised in successive rounds of collateral proceedings applies when the same issue is raised on direct appeal and the initial round of collateral review) (citing *Sanders v. United States*, 373 U.S. 1, 15 (1963)). Because the Court of Appeals resolved this issue against Petitioner on the merits, the court declines to address it further. Petitioner urges that his direct appeal pertained only to the sufficiency of the evidence that he "used" the firearm and that his collateral attack pertains to the question of whether he "carried" it. (Movant's § 2255 Response to the Government's Response (hereinafter, "Pet. Reply,") at 1.) As this court reads the decision, however, the Court of Appeals noted the disjunctive nature of the statutory prohibition and dealt with the prohibition on "carrying" and "possessing" as part and parcel of Petitioner's argument about whether he "used" the firearm. *See* 316 F.3d at 660-61.

The sufficiency of the evidence challenge is denied.

**2.     Ineffective Assistance of Counsel**

Finally, Petitioner argues that his defense counsel was constitutionally ineffective. Petitioner points to a litany of perceived shortcomings in his defense attorney's performance, namely, the failure to call Petitioner's mother as an "alibi witness"; the failure to move to suppress Petitioner's statements to investigating officers about bullets found in his Michigan City home; the failure to object to the jury instructions as related to Counts Two and Three; the failure to challenge the sufficiency of the evidence with respect to Count Three; the failure to object to *ex post facto* violations in Petitioner's sentencing; and the failure to raise a myriad of issues on direct appeal. (Pet. Mem. at 23-29.)

To prevail on this claim, Petitioner must show (1) that his defense counsel's performance fell below an objective standard of reasonableness and (2) that had counsel performed reasonably, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Because there is a tendency to infer ineffectiveness from adverse outcomes, this court, in inquiring into the reasonableness of defense counsel's performance, "must be 'highly deferential'

7

and 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Canaan v. McBride*, 395 F.3d 376, 384 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). Furthermore, "[c]ounsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *Peoples*, 403 F.3d at 848 (citing *Bell v. Cone*, 535 U.S. 685 (2002)).

Petitioner's complaints here are evaluated against a record in which appointed counsel filed several appropriate pretrial motions, (Dkt. Nos. 33-38, 61, 65-66, 68), including a motion challenging the admissibility of the government's expert witness that generated a *Daubert* hearing at which counsel performed commendably, if ultimately unsuccessfully. (Dkt. No. 52.) At trial, defense counsel thoroughly cross-examined the government's witnesses and presented testimony from his own investigator's conversations with Patrick. Following a partially favorable verdict, defense counsel remained zealous, making written motions for a new trial and asking for a mental capacity evaluation of Petitioner. (Dkt. Nos. 87, 91.) On appeal of the remaining charges, defense counsel attacked the government's most damaging evidence–Patrick's grand jury testimony and the government's expert testimony explaining why Patrick might have recanted her grand jury testimony at trial.

Even if viewed out of context, Petitioner's objections to his defense counsel's performance are unpersuasive. Not calling Petitioner's mother to testify to provide an alibi, for instance, was a perfectly reasonable trial strategy when four government witnesses put Petitioner with Patrick in Chicago on January 14, 2001, and two government witnesses put Petitioner with Patrick in Michigan City between then and January 18, 2001. Defense counsel's trial strategy was not to claim that this was a case of mistaken identity, but rather to argue that while Petitioner's abuse of Patrick might constitute battery under state law, it did not rise to the level of the particular *federal*

8

offenses with which Petitioner had been charged. (Tr. at 718-19.) The strategy succeeded to the extent that it resulted in Petitioner's acquittal on the kidnaping charge. This court will not use *Strickland* to second-guess the wisdom of that strategy simply because it did not prevent conviction on the other two counts.

Nor can the court conclude that Petitioner's defense counsel acted unreasonably when he failed to challenge the admissibility of Petitioner's statements made to investigating officers about bullets found in his Michigan City apartment. The statements were not introduced at trial at all, so the failure to seek an order suppressing them made no difference to the outcome. In any event, it appears that the FBI's search of Petitioner's apartment was pursuant to a warrant and Petitioner's statements to the FBI occurred after he had received *Miranda* warnings. (Tr. at 578-81.)

Petitioner's theory with respect to the jury instructions is similarly without merit. The verdict form below Count Two directs the jurors, if they found Petitioner guilty on Count Two to "check one or more of the following crimes which you unanimously agree defendant committed . . ." (Dkt. No. 84.) In response, the jurors identified, "Criminal Recklessness in violation of Indiana Code Section 35-42-2-2(c)(1)." (*Id.*) Petitioner believes that this special verdict form constructively amended Count Two by adding the elements of criminal recklessness to the elements of interstate domestic violence. (Pet. Mem. at 25-26.) Putting aside the question of how Petitioner could be disadvantaged by an error that would require the government to prove more elements rather than less, constructive amendment only occurs when the government or the court broaden "the possible bases for conviction beyond those presented by the grand jury." *United States v. Jones*, 418 F.3d 726, 729 (7th Cir. 2005). Here, the jury instructions clearly set out the three elements of interstate domestic violence: (1) that Petitioner and Patrick were intimate partners; (2) that Petitioner traveled in interstate commerce with the intent to kill, injure or harass Patrick; and (3) that in the course of or as a result of that conduct Petitioner committed a crime of violence against Patrick. (Tr. at 750.) The instructions provide the requisite *mens rea* in element two, and the court was clear that the jury

should consider criminal recklessness, with its potentially lower requisite *mens rea*, "[w]ith regard to the third element of interstate domestic violence." (*Id.* at 750-51.)  Taken in light of these instructions, the court does not find that the verdict form constructively amended Count Two.

With respect to Count Three, Petitioner hones in on defense counsel's statement during a meeting between the parties to respond to a jury question that he should have objected to the instructions on 18 U.S.C. § 924(c)(1)(A) because it gives "the impression that all [Petitioner] has to do is carry [the firearm]; he doesn't have to use it."  (Pet. Mem. at 24 (citing Tr. at 798).)  Petitioner, however, ignores discussion later in the transcript indicating that this disjunctive condition is in fact a correct statement of the law.  (Tr. at 800.)  The statutory language, as read by the prosecuting attorney, specifically targets, "any person who, during and in relation to any crime of violence . . . uses *or* carries a firearm, *or* who, in furtherance of any such crime, possesses a firearm."  18 U.S.C. § 924(c)(1)(A) (emphasis added).

Nor will the court find that Petitioner's counsel was ineffective for failing to challenge the sufficiency of the evidence with respect to whether Petitioner used or carried his firearm in relation to the interstate domestic violence count.  Defense counsel did in fact make this challenge on appeal to the Seventh Circuit.

Petitioner's penultimate objection is that his counsel was ineffective for failing to allege that Petitioner's sentence with respect to Count Two violated the *ex post facto* clause.  (Pet. Mem. at 26-27.)  Petitioner committed the crime for which the jury found him guilty in January 2001.  Petitioner asserts that this court calculated his sentence based on the Federal Sentencing Guidelines as amended in November 2001.  (*Id.*)  Prior to the November 2001 amendment to the Federal Sentencing Guidelines, the base offense level for interstate domestic violence at the time Petitioner committed his crime was 14, yielding a sentencing range of twenty-one to twenty-seven months at Petitioner's criminal history categorization.  U.S.S.G. § 2A6.2(a).  Petitioner stakes his claim on passages in the sentencing transcript in which this court and defense counsel appear to

assign Count Two an offense level of 18 with a sentencing range of thirty-three to forty-one months. (1/29/02 Tr. at 3, 18.) While 18 is coincidentally the amended base offense level for interstate domestic violence, the court and counsel's calculation actually recognized that the *base* offense level was 14 but added four points for the violation of a protective order and bodily injury, yielding an adjusted offense level of 18. (Presentence Investigation Report, *United States v. Young*, No. 01-CR-052-1, at 5-6.)

Because the court used the pre-amended Guideline, defense counsel was correct to not raise the *ex post facto* argument. That Petitioner was in fact sentenced under the kidnaping Guideline makes the futility of Petitioner's argument even more stark. The interstate domestic violence guideline in effect in January 2001 states: "If the offense involved conduct covered by another offense guideline from Chapter Two, Part A (Offenses Against the Person), apply that offense guideline, if the resulting offense level is greater than that determined above." U.S.S.G. § 2A6.2(c)(1). The court found by a preponderance of the evidence that Petitioner's conduct constituted kidnaping, even though the jury could not find the same beyond a reasonable doubt.[5] (1/29/02 Tr. at 18-21.) Until 2003, well after both Petitioner's crime and his sentencing, the Guidelines pegged the base offense level for kidnaping at 24. U.S.S.G. § 2A4.1. At Petitioner's

---

[5] Petitioner's argument that this court was not entitled to consider Petitioner's conduct by a preponderance of the evidence, (Pet. Mem. at 3), is without merit. The Supreme Court specifically approved of this practice at the time of Petitioner's sentencing. *United States v. Watts*, 519 U.S. 148, 157 (1997) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."). Under *United States v. Booker*, 543 U.S. 220, 233-34 (2005), the Sixth Amendment is implicated when a district court imposes a sentence greater than the statutory maximum or enforces the Guidelines as mandatory, but not merely when the court engages in fact-finding. *See United States v. White*, 443 F.3d 582, 592 (7th Cir. 2006); *see also McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (holding that *Booker* does not apply retroactively). Additionally, the November 2001 amendment to U.S.S.G. § 2A6.2(c)(1) replacing the above quoted language with, "If the offense involved the commission of another criminal offense, apply the offense guideline from Chapter Two, Part A (Offenses Against the Person) most applicable to that other criminal offense, if the resulting offense level is greater than that determined above." This change did not operate to change the standard of proof, but rather, according to the historical notes, only clarified how courts were to apply the Guidelines.

11

criminal history categorization, the recommended range was sixty-three to seventy-eight months of incarceration, but the statutory maximum for interstate domestic violence was sixty months. 18 U.S.C. § 2261(b)(5). This court thus sentenced Petitioner to five years on Count Two, well above the pre- and post-amended Guideline range for interstate domestic violence.

Finally, Petitioner takes issue with the fact that defense counsel raised only four issues on appeal rather than the umpteen potential issues Petitioner cites in his brief.[6] (Pet. Mem. at 27-29.) Judge Wood has observed:

> Appellate lawyers are clearly not incompetent when they refuse to follow a "kitchen sink" approach to the issues on appeals. To the contrary, one of the most important parts of appellate advocacy is the selection of the proper claims to urge on appeal. . . . Throwing in every conceivable point is distracting to appellate judges, consumes space that should be devoted to developing the arguments with some promise, inevitably clutters the brief with issues that have no chance because of doctrines like harmless error or the standard of review of jury verdicts, and is overall bad appellate advocacy.

*Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000). This court cannot find that defense counsel's failure to lard Petitioner's appeal with additional issues was objectively unreasonable. The four issues defense counsel chose to develop on appeal strike this court as the most fruitful based on the record.

## **CONCLUSION**

For the forgoing reasons, Young's petition for relief under 28 U.S.C. § 2255 is denied.

ENTER:

Dated: May 23, 2006

_____
REBECCA R. PALLMEYER

---

[6] Petitioner states, for instance, that defense counsel should have argued to the Seventh Circuit that the special jury verdict with respect to Count Two was inconsistent with the jury's verdict with respect to Count Three; defense counsel should have appealed the jury instructions with respect to Count Two; defense counsel should have appealed the sufficiency of the government's evidence with respect to Count Two; and defense counsel should have appealed the constitutionality of 18 U.S.C. § 2261. (Pet. Mem. at 27-29.)

United States District Judge